IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>AARON JOSHUA PRICE,<br><br>  Defendant. | MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS<br><br><br>Case No. 2:12-CR-81 TS |

  This matter is before the Court on Defendant Aaron Price's Motion to Suppress.[1] The Court has heard both testimony and oral argument on this matter and, for the reasons set forth below, will deny Defendant's Motion.

## I. BACKGROUND

  On January 15, 2012, Officer Aaron Shepard received a dispatch at 6:47 p.m. regarding a "man with a gun" at 525 West Ash Street in Tooele, Utah.[2] Officer Shepard was in his marked patrol car and was "within probably a minute at the very most from the address."[3] Dispatch advised Officer Shepard that a tow truck driver for Mr. Tow, a towing company, was attempting

---

[1] Docket No. 18.

[2] Docket No. 28, at 7.

[3] *Id.*

1

a private impound of a maroon SUV when the owner of the vehicle came out to the tow truck driver and "pulled a gun on him."[4] The individual then got into the vehicle and left the area.

While en route to the location, Officer Shepard saw what he believed to be lights from a tow truck. He then asked dispatch if the tow truck driver was attempting to follow the suspect vehicle. Dispatch responded that the tow was attempting to follow the vehicle, "and at that time some headlights flipped on in front of [Officer Shepard] as if there was a vehicle parked on the side of the road or coming at [him]."[5] The vehicle—a maroon SUV—passed Officer Shepard, and Officer Shepard made a U-turn to follow it.[6] This occurred about three blocks from 525 West Ash Street.

Officer Shepard activated the patrol car's emergency lights to signal the suspect vehicle to pull to the side of the road. As this was considered a high-risk stop, Officer Shepard waited for other officers to arrive. While waiting, he clarified details with dispatch, which confirmed that the vehicle he pulled over matched the description given by the tow truck driver and that the vehicle was last seen heading northbound on 200 West from 400 North, which was near Officer Shepard's current location. Officer Shepard was also advised that the vehicle did not have a front license plate and that the tow truck driver did not have an opportunity to see the rear plate. Officer Shepard advised dispatch that the vehicle he stopped had a temporary plate.

Officer Shepard approached the vehicle and saw that there were two occupants in the front seats and wheels with attached tires on the back seat. Officer Price first ordered the driver—later identified as Aaron Price ("Defendant") to exit the vehicle. Officer Shepard

---

[4] *Id.* at 8.

[5] *Id.* at 10.

[6] *Id.* at 11.

performed a Terry frisk on Defendant and did not find any weapons. The Defendant told Officer Shepard that he had an argument with a tow truck driver, but denied having a gun. Officer Price then secured Defendant in the back of the patrol car. At this point, two other officers—Officer Alan Gifford and Sergeant Don Nelson—arrived at the scene and were providing support.

The officers then ordered the passenger, later identified as Teeha Nash ("Ms. Nash") out of the vehicle. Officer Shepard testified that Ms. Nash was ordered to exit the vehicle because the officers still did not know where the firearm was located. After verifying that there were no other occupants in the vehicle, the officers conducted a Terry frisk on Ms. Nash. The officers did not find any weapons and secured Ms. Nash in a patrol car.

The officers then searched the SUV "to see if [they] could find the weapon in the immediate area of the driver."[7] After they were unable to find a weapon in the front of the vehicle, Officer Shepard went to speak with the tow truck driver while Officer Gifford and Sergeant Nelson continued to search the vehicle. The officers testified that they were concerned about finding the weapon because they believed it was evidence in a crime and because of safety concerns.

The tow truck driver, Hoy Anderson ("Mr. Anderson") informed Officer Shepard that he was attempting a private impound when he was confronted by an individual who demanded that he release the car. Mr. Anderson told the individual that he would not release the car, at which point the individual ran back to the house and made a comment like "get that thing."[8] The individual later returned with a handgun and demanded that Mr. Anderson release the car. Mr.

---

[7] *Id.* at 26.

[8] *Id.* at 29.

3

Anderson told Officer Shepard that he was sure that it was a handgun and that it was black and small.

After speaking with Mr. Anderson, Officer Shepard returned to where the SUV had turned on its lights to see if Defendant had thrown the handgun from the vehicle. While he was in that area, he was informed that the other officers had located a small, black handgun wedged between the back seats of the SUV. The officers also located a holster on the floorboard in the back of the vehicle. Shepard returned to the vehicle and confirmed that the weapon found matched the description given by Anderson.

Defendant and Ms. Nash were taken to the Tooele Police Department to be interviewed, and the SUV was towed to the police department by Dakota Towing. Agent Gifford interviewed Ms. Nash at 9:00 p.m. During her interview, Ms. Nash made admissions that Officer Grogan included in an affidavit in support of a warrant to search the SUV. The warrant and affidavit were submitted electronically to Judge McCullagh, who returned the signed warrant that night. Although the warrant authorized a daytime search, Officer Gifford testified that the search likely took place sometime between 10:00 p.m. and 12:00 a.m.

Defendant moves to suppress evidence, arguing that: 1) reasonable suspicion did not exist for Officer Shepard's initial traffic stop; 2) Defendant's initial detention and subsequent arrest were not supported by probable cause; 3) the warrantless search of Defendant's vehicle at the scene of the traffic stop was not justified where both Defendant and Ms. Nash were already secured; and 4) the officers exceeded the scope of the warrant, rendering the search illegal, when they executed the warrant at night in violation of the express language of the warrant.

## II. REASONABLE SUSPICION AND PROBABLE CAUSE

A.     LEGAL STANDARD

The Fourth Amendment protects individuals against "unreasonable searches and seizures" by law enforcement.[9] "A traffic stop, however brief, constitutes a seizure within the meaning of the Fourth Amendment, and is therefore only constitutional if it is 'reasonable.'"[10] It is well settled that an investigative stop is justified where police officers have "a reasonable, articulable suspicion that the detainee has been, is, or is about to be engaged in criminal activity."[11]

As explained by the United States Supreme Court: "When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."[12] "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture.'"[13]

The Tenth Circuit has further elaborated:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but

---

[9] U.S. CONST. amend. IV.

[10] *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).

[11] *United States v. Elkins*, 70 F.3d 81, 83 (10th Cir. 1995).

[12] *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citations omitted).

[13] *Alabama v. White*, 496 U.S. 325, 330 (1990).

also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

"Officers may ask the detained individual questions during the Terry stop in order to dispel or confirm their suspicions."[14]

An arrest is "characterized by highly intrusive or lengthy search or detention," and must therefore be supported by probable cause.[15] "Probable cause to arrest exists only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'"[16]

B.  ANALYSIS

    1.  Reasonable suspicion to stop

Defendant argues that the facts of the instant case are similar to *United States v. Jones*,[17] where the Tenth Circuit found that an officer who stopped a vehicle after receiving a call from dispatch did not have "a reasonable, articulable suspicion that the person ha[d] been, [wa]s, or [wa]s about to be engaged in criminal activity."[18]

However, the events in *Jones* are significantly different than those in the instant case. First, in *Jones*, the report was that two African-American men—one of whom was holding a

---

[14] *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993) (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983)).

[15] *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (citation omitted).

[16] *Id.* (quoting *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001)).

[17] 998 F.2d 883 (10th Cir. 1993).

[18] *Id.* at 886.

gun—had pounded hard on the door of an apartment.[19] "The officers admitted on the stand that they were aware that these actions were not crimes in New Mexico."[20] In the instant case, the dispatch center reported that a tow truck driver was threatened with a handgun, which if true, would support a conviction for aggravated assault under Utah law—a felony.[21] Furthermore, in *Jones* the defendants' car was five minutes from the location of the disturbance, "was not travelling from the direction of the disturbance," and "was on a street that, by the officers' own admission, could only be reached from the disturbance by a circuitous route."[22] In the instant case, Officer Shepard saw a vehicle matching the reported description three blocks and less than one minute from where and when the incident occurred. Finally, the events in *Jones* occurred "in Albuquerque, a major population center, at 4:00 p.m. on a weekday afternoon."[23] The events in the instant action occurred in a much smaller town that—as is apparent from a review of the patrol car video—did not have much traffic at the time in question. The Court finds that the information possessed by Officer Shepard when he conducted his investigatory stop was substantial and distinguishable from *Jones*.

With respect to the reliability of the information in the instant case, "[t]he veracity of identified private citizen informants (as opposed to paid or professional criminal informants) is generally presumed in the absence of special circumstances suggesting that they should not be

---

[19] *Id.*

[20] *Id.*

[21] Utah Code Ann. § 76-5-102; *see also United States v. Farnsworth*, 92 F.3d 1001, 1010 (10th Cir. 1996).

[22] *Jones*, 998 F.2d at 885.

[23] *Id.*

7

trusted."[24] The tow truck driver also provided his name and the company he worked for, further strengthening his reliability. The Court therefore finds the information provided by the tow truck driver to be reliable.

For these reasons, the Court finds that the information before Officer Shepard was sufficient to create reasonable suspicion that the driver of the SUV had been engaged in criminal activity.

2. Probable cause to detain

Defendant also argues that Officer Shepard did not have probable cause to detain him after the investigatory stop occurred. When Officer Shepard approached the vehicle, he was able to see both Defendant and Ms. Nash. The fact that there was an additional passenger weighs against Officer Shepard's suspicion that Defendant may have been the individual who threatened the tow truck driver. However, once Defendant had exited the vehicle and Officer Shepard conducted a Terry frisk, Officer Shepard promptly asked about the interaction with the tow truck driver and Defendant acknowledged that they had argued. Defendant has not challenged the voluntariness of this statement, and the Court finds that the admission, when combined with the previous factors, created probable cause that Defendant was the individual who had threatened the tow truck driver with a gun.

### III. WARRANTLESS SEARCH AT THE TRAFFIC STOP

Defendant next argues that the warrantless search of Defendant's vehicle at the scene of the traffic stop was not justified where both Defendant and Ms. Nash were already secured. The Supreme Court stated in *Arizona v. Gant*[25] that "circumstances unique to the vehicle context

---

[24] *United States v. Brown*, 496 F.3d 1070, 1075 (10th Cir. 2007).

[25] 556 U.S. 332 (2009).

8

justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."[26]

In the instant case, a tow truck driver informed the police that he had been threatened with a handgun while attempting a private impound and that the driver had then driven away in a maroon SUV. Three blocks away and less than a minute later, Officer Shepard saw a vehicle matching the description given by the tow truck driver. Officer Shepard stopped the vehicle, and the driver admitted soon thereafter that he had argued with the tow truck driver. The Court finds that these circumstances, when viewed together, made it reasonable for Officer Shepard to believe that evidence relevant to the crime of arrest would be found in the vehicle.[27]

## IV. SEARCHING THE VEHICLE AT NIGHT

Defendant's final argument is that officers exceeded the scope of the warrant when they searched the vehicle at the station that night, as the warrant expressly authorized "a search in the daytime."[28] However, the Tenth Circuit "has affirmed the inevitable discovery doctrine in the context of an illegal search which preceded lawful impoundment and inventory."[29] "'[I]f evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible.'"[30]

---

[26] *Id.* at 343 (citation omitted).

[27] The Court also notes that the public safety was also implicated as, if the handgun were not present in the vehicle, it might indicate that it was discarded on the street when Defendant saw Officer Shepard's patrol car.

[28] Evid. Hearing Ex. E, Search Warrant, at 2.

[29] *United States v. Haro-Salcedo*, 107 F.3d 769, 773 (10th Cir. 1997).

[30] *Id.* (alteration in original) (quoting *United States v. Ibarra*, 955 F.2d 1405, 1410 (10th Cir. 1992)).

9

Here, as neither Defendant nor Ms. Nash was available to drive the vehicle, police department policy was to impound Defendant's vehicle. As part of that policy, officers are to conduct an inventory, using a specific form to catalog the contents of the vehicle. After the search was performed at the police station, the vehicle was impounded. Defendant does not dispute that a proper inventory search would have uncovered the evidence that he seeks suppressed. Therefore, "[e]ven assuming arguendo that the [night time search] was improper and should have been conducted [during the day] . . . it was inevitable that the [evidence] would have been discovered."[31]

## V. CONCLUSION

Based on the forgoing, it is therefore

ORDERED that Defendant's Motion to Suppress (Docket No. 18) is DENIED.

The time between the filing of Defendant's Motion and the date of this Order is hereby excluded for purposes of Speedy Trial Act calculation under 18 U.S.C. §§ 3161 (h)(1)(D), (H).

DATED   July 23, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[31] *Id.* (quoting 970 F.2d 732) (alteration in original).